NO. 4-05-0765          Filed 8/9/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| ROGER T. RUSSELL, | ) Appeal from |
|       Plaintiff-Appellant, | ) Circuit Court of |
|       v. | ) Sangamon County |
| ROD R. BLAGOJEVICH, Governor of the | ) No. 04MR514 |
| State of Illinois; BRIAN HAMER, | ) |
| Director, Illinois Department of | ) |
| Revenue; JACK LAVIN, Director, | ) |
| Illinois Department of Commerce and | ) |
| Economic Opportunity; and DANIEL W. | ) Honorable |
| HYNES, Comptroller of the State of | ) John W. Belz, |
| Illinois, | ) Judge Presiding. |
|       Defendants-Appellees. | |

_____

JUSTICE MYERSCOUGH delivered the opinion of the court:

Plaintiff, Roger T. Russell, the former State's Attorney of Boone County, appeals the trial court's dismissal of his _mandamus_ petition against defendants, Rod R. Blagojevich, Governor of the State of Illinois; Brian Hamer, Director of the Department of Revenue; Jack Lavin, Director of the Illinois Department of Commerce and Economic Development; and Daniel W. Hynes, Comptroller of the State of Illinois.  We affirm.

I. BACKGROUND

The Illinois Constitution provides that a State's Attorney shall be elected in each county for four-year terms and that "[h]is salary shall be provided by law."  Ill. Const. 1970, art. VI, §19.  Section 4-2001(a) of the Counties Code (55 ILCS 5/4-2001(a) (West 2004)) provides "[t]he State shall furnish 66 2/3% of the total annual compensation to be paid to each state's attorney in Illinois based on the salary in effect on December

31, 1988, and 100% of the increases in salary taking effect after December 31, 1988."  Other than Cook County, the salary to each State's Attorney shall be "in counties of 30,000 or more inhabitants, $65,500 until December 31, 1988, $80,000 until June 30, 1994, and $96,837 thereafter or as set by the Compensation Review Board, whichever is greater."  55 ILCS 5/4-2001(a)(4) (West 2004).

The Compensation Review Act (Act) created the Compensation Review Board (Board) (25 ILCS 120/1 through 6 (West 2004)), which determines the salaries and salary increases due various government officials, including State's Attorneys (25 ILCS 120/4 (West 2004)).  The Board then periodically reevaluates these salaries and makes adjustments, which are submitted in a report to the General Assembly.  25 ILCS 120/4 (West 2004).  See Quinn v. Donnewald, 107 Ill. 2d 179, 183-84, 483 N.E.2d 216, 218-19 (1985) (describing Compensation Review Act and Compensation Review Board).

In 1990, the Board submitted a report to the General Assembly setting the specific salaries for various governmental officials and determining each of the salaries were to include cost-of-living adjustments (COLAs).  The General Assembly adopted Senate Joint Resolution 192, which, while reducing the salaries set by the Board, approved the COLAs.

In 2002, the Board submitted its report for the fiscal year 2003, which determined that public officials would receive a 3.8% COLA.  In response, the General Assembly passed Public Act

92-607 (Pub. Act 92-607, §5, eff. June 28, 2002 (2002 Ill. Laws 1333)), which provided that state officials whose salaries were determined by the Board were "prohibited from receiving and shall not receive any increase in compensation based on a cost of living adjustment, as authorized by Senate Joint Resolution 192 of the 86th General Assembly, for or during the fiscal year beginning July 1, 2002." 25 ILCS 120/5.5 (West 2004). Based on the legislation, none of the positions affected received a COLA during the 2003 fiscal year. In May 2004, the Illinois Supreme Court held Public Act 92-607 void <u>ab</u> <u>initio</u> in <u>Jorgensen v. Blagojevich</u>, 211 Ill. 2d 286, 811 N.E.2d 652 (2004).

Plaintiff was elected State's Attorney of Boone County, which has a population greater than 30,000, and held the position from February 11, 1987, until July 30, 2004. His salary for fiscal year 2002 was $134,091. On July 26, 2004, plaintiff sent a letter to Jack Lavin and Brian Hamer requesting his COLA and back salary that had been denied by Public Act 92-607. Specifically, the letter pointed out that Public Act 92-607 had been found void <u>ab</u> <u>initio</u> in <u>Jorgensen</u> and requested: $5,095.49 for July 1, 2002, through June 30, 2003; $5,238.16 for July 1 2003, through June 30, 2004; and an incremental amount to be determined for July 1, 2004, through July 30, 2004. The letter pointed out that plaintiff would be retiring his position effective July 30, 2004, and his pension would be based on his salary at that time, which would be $146,948 with the COLA and $141,569 without it. Neither Lavin nor Hamer responded to plaintiff.

On July 27, 2004, plaintiff delivered a similar letter to Sylvia E. Schroeder, the Boone County clerk and recorder, and Carolynn G. Knox, the Boone County treasurer and collector. In response to plaintiff's letter, Schroeder and Knox submitted affidavits. Schroeder stated that she had received no communication from anyone in state government confirming that Boone County would be reimbursed for the increase. She indicated that she would appropriate the COLA as soon as she received confirmation that Boone County was entitled to reimbursement from the State of Illinois. According to Knox, she receives forms from the state with preprinted amounts of reimbursement and had not received any forms with the increase demanded by plaintiff. Knox, similar to Schroeder, indicated a willingness to pay the COLA to plaintiff but had received no communication from anyone in state government that Boone County would be reimbursed for the increase.

In December 2004, plaintiff filed the instant complaint for mandamus. Plaintiff requested an order of mandamus, directing (1) Hamer and Lavin to issue vouchers to Boone County to reflect the 3.8% COLA of fiscal year 2003 and all subsequent increases in the State's Attorney's salary, and (2) Hynes to pay to Boone County from the Illinois State Treasury the amounts reflecting the 3.8% COLA for fiscal year 2003 and all subsequent increases upon Boone County's submission of the vouchers. On March 3, 2005, defendants filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)). On August 17, 2005, the trial court

granted defendants' motion, finding the holding in <u>Jorgensen</u> was only as to judges and that the unconstitutional portion of Public Act 92-607 was severable from the remainder.  This appeal followed.

## II. ANALYSIS

### A. Standard of Review

A motion to dismiss under section 2-615 of the Code tests the legal sufficiency of the complaint.  <u>Lee v. Findley</u>, 359 Ill. App. 3d 1130, 1134, 835 N.E.2d 985, 988 (2005).  In reviewing a section 2-615 dismissal, we must decide whether the allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted.  <u>Bajwa v. Metropolitan Life Insurance Co.</u>, 208 Ill. 2d 414, 421, 804 N.E.2d 519, 525 (2004).  We review <u>de</u> <u>novo</u> a trial court's dismissal of a petition for <u>mandamus</u>.  <u>Lee</u>, 359 Ill. App. 3d at 1134, 835 N.E.2d at 988.

### B. <u>Mandamus</u>

"<u>Mandamus</u> is appropriate relief only where a petitioner can demonstrate a clear right to the requested relief, the respondent's clear duty to act, and the respondent's clear authority to comply with the terms of the writ.  [Citation.]  The party requesting a writ of <u>mandamus</u> bears the burden of demonstrating a clear right to the relief desired."  <u>Romero v. O'Sullivan</u>, 302 Ill. App. 3d 1031, 1034, 707 N.E.2d 986, 988 (1999).

"[M]andamus is available only when the plaintiff has set forth every material fact needed to prove that he has a clear, legal right and is entitled to the performance of the act he seeks to compel." Mason v. Snyder, 332 Ill. App. 3d 834, 840, 774 N.E.2d 457, 461 (2002).

### 1. Right to Relief

#### a. Jorgensen

The Illinois Constitution provides "Judges shall receive salaries provided by law which shall not be diminished to take effect during their terms of office.  All salaries and such expenses as may be provided by law shall be paid by the State ***."  Ill. Const. 1970, art. VI, §14.  In Jorgensen, 211 Ill. 2d at 287, 811 N.E.2d at 654, the supreme court considered "whether the General Assembly and the Governor violated the Illinois Constitution when they attempted to eliminate the cost-of-living adjustments to judicial salaries provided by law for the 2003 and 2004 fiscal years."  The legislature had attempted to suspend the COLA for judges during the fiscal year 2003 by passing Public Act 92-607, and Governor Blagojevich used a reduction veto to remove the COLA from the budget for fiscal year 2004.  Jorgensen, 211 Ill. 2d at 289-91, 811 N.E.2d at 655-56. However, the supreme court found that Senate Joint Resolution 192 made COLAs a vested component of judicial salaries as of 1990.  Jorgensen, 211 Ill. 2d at 307, 811 N.E.2d at 664.  The court found that because the COLAs were vested, the legislature and the Governor violated

6

article VI, section 14, by trying to prevent the judges from receiving them. <u>Jorgensen</u>, 211 Ill. 2d at 307-08, 811 N.E.2d at 664-65. In so concluding, the supreme court stated: "Because we agree with the circuit court that Public Act 92-607 is unconstitutional, and because it is unconstitutional in its entirety, the statute has no force or effect. It is void <u>ab</u> <u>initio</u>. It is as if the law had never been passed." <u>Jorgensen</u>, 211 Ill. 2d at 309, 811 N.E.2d at 665-66. Further, in <u>Perlstein v. Wolk</u>, 218 Ill. 2d 448, 459, 844 N.E.2d 923, 929 (2006), the supreme court stated that in <u>Jorgensen</u>, "we held Public Act 92-607, which suspended the 2003 COLA, constitutionally infirm and void <u>ab</u> <u>initio</u>." However, the court rejected <u>Jorgensen</u> as precedent on the issue in <u>Perlstein</u>--whether to strictly apply the void <u>ab</u> <u>initio</u> doctrine--stating "<u>Jorgensen</u> does not aid in our resolution of this issue." <u>Perlstein</u>, 218 Ill. 2d at 459, 844 N.E.2d at 929.

Plaintiff argues that <u>Jorgensen</u>'s holding is clear that Public Act 92-607 is unconstitutional and that, because it is unconstitutional in its entirety, he is entitled to his COLA. Defendants respond that Public Act 92-607 was only declared unconstitutional as applied to judges in <u>Jorgensen</u>, the supreme court's use of "in its entirety" and "<u>ab</u> <u>initio</u>" was <u>dicta</u>, and that the unconstitutional portion is severable from the rest of the act.

To successfully facially challenge a statute, one must establish the statute's invalidity under <u>any</u> set of facts.

People v. Garvin, 219 Ill. 2d 104, 117, 847 N.E.2d 82, 89 (2006). The fact that a statute may operate invalidly under some circumstances is insufficient to establish facial invalidity; a statute is facially unconstitutional only if the statute is constitutional under no set of circumstances. Hill v. Cowan, 202 Ill. 2d 151, 157, 781 N.E.2d 1065, 1069 (2002). So long as a situation exists where a statute could be validly applied, a facial challenge must fail. Hill, 202 Ill. 2d at 157, 781 N.E.2d at 1069.

An "as applied" challenge requires a plaintiff to show the statute violates the constitution as it applies to him. Garvin, 219 Ill. 2d at 117, 847 N.E.2d at 89. "[I]f the plaintiff succeeds in an as-applied claim, he may enjoin the objectionable enforcement of the statute only against himself, while a successful facial attack voids the statute in its entirety and in all applications." Lamar Whiteco Outdoor Corp. v. City of West Chicago, 355 Ill. App. 3d 352, 365, 823 N.E.2d 610, 621 (2005).

Public Act 92-607 specifically provided judges were prohibited from receiving and shall not receive any increase in compensation based on a cost-of-living adjustment, as authorized by Senate Joint Resolution 192 for or during the fiscal year beginning July 1, 2002. The plaintiffs in Jorgensen were a class consisting of all Illinois judges. Jorgensen, 211 Ill. 2d at 293, 811 N.E.2d at 657. In light of the constitution's prohibition on diminishment of judicial salaries, there are no judges in Illinois to whom section 5.5 could be validly applied. Accordingly, insofar as Public Act 92-607 applies to judges, it is void

in all applications.

The constitutionality of the remainder of the act was not at issue before the court in Jorgensen. Moreover, statutes are presumed to be constitutional. General Motors Corp. v. Motor Vehicle Review Board, 361 Ill. App. 3d 271, 281, 836 N.E.2d 903, 912 (2005). For the court to declare Public Act 92-607 void as to all positions listed, not just judges, would be akin to throwing out the baby with the bath water. We see no reason the supreme court would have intended such a result, given the issue before it in Jorgensen. Public Act 92-607 did not violate the single-subject rule. See Johnson v. Edgar, 176 Ill. 2d 499, 680 N.E.2d 1372 (1997) (when an act is found to violate the single-subject rule, it must be struck in its entirety). Our reading of Jorgensen is that Public Act 92-607 is unconstitutional and void ab initio as to judges.

This view is supported by the analysis in Jorgensen, where the supreme court relied on article VI, section 14, in finding Public Act 92-607 unconstitutional. That section of the constitution does not apply to the other officers listed in section 5.5. In fact, the court stated "the prohibition against diminishment of judicial salaries and the doctrine of separation of powers place judicial salaries in a qualitatively different legal posture than salaries paid to other state officers and employees." Jorgensen, 211 Ill. 2d at 308-09, 811 N.E.2d at 665. The court did not discuss any other elected officers in its analysis and did not declare Public Act 92-607 unconstitutional

as to plaintiff.

### b. Constitutionality of Public Act 92-607
### With Respect to State's Attorneys

Plaintiff argues that Public Act 92-607 is unconstitutional as it applies to a State's Attorney's salary. We disagree and are aware of no constitutional provision prohibiting the legislature from diminishing the salary of a State's Attorney. The Illinois Constitution does prohibit changes to the salary of a legislator during the term for which he has been elected. See Ill. Const. 1970, art. IV, §11 ("A member shall receive a salary and allowances as provided by law, but changes in the salary of a member shall not take effect during the term for which he has been elected"). Similarly, article V, section 21, provides that changes in the salaries of executive officers "elected or appointed for stated terms shall not take effect during the stated terms." Ill. Const. 1970, art. V, §21. However, the supreme court has held that State's Attorneys are not constitutionally prohibited from receiving salary increases during their terms of office. Ingemunson v. Hedges, 133 Ill. 2d 364, 365, 549 N.E.2d 1269, 1269 (1990). In reaching this conclusion, the court found that State's Attorneys were not subject to the salary raise prohibition in article V, section 21. Ingemunson, 133 Ill. 2d at 367, 549 N.E.2d at 1270. The court did not consider whether State's Attorney's salaries could be decreased during their terms of office. Ingemunson, 133 Ill. 2d at 373, 549 N.E.2d at 1273, (Miller, J., specially concurring).

10

When the drafters intended for a particular salary not to be subject to change mid-term, that intent appears in the article creating the position.  As further evidence, article VII, section 9, provides:  "An increase or decrease in the salary of an elected officer of any unit of local government shall not take effect during the term for which that officer is elected."  Ill. Const. 1970, art. VII, §9(b); see Ingemunson, 133 Ill. 2d at 369, 549 N.E.2d at 1271, citing Hoyne v. Danisch, 264 Ill. 467, 470-72, 106 N.E. 341, 343 (1914) (State's Attorneys are state officials not county officers under the language of the constitution).  However, clerks and other nonjudicial officers are treated similarly to State's Attorneys with respect to salary. See Ill. Const. 1970, art. VI, §18(c) ("The salaries of clerks and other non-judicial officers shall be as provided by law"). State's Attorneys clearly do not stand in the same shoes as executive, legislative, judicial, or local officers with respect to salary.

This case places us in the dubious position of declaring that plaintiff's salary may be decreased during his term of office, while the supreme court has declared our own salaries cannot be.  However, we must agree with defendants that, had the drafters of the constitution intended to prohibit increases and decreases in the salary of State's Attorneys, the drafters would have done so in the section creating State's Attorneys as they have done with executive officials, legislators, judges, and local officers.

## 2. Duty and Authority To Act

"'Mandamus is an extraordinary remedy to enforce, as a matter of right, "the performance of official duties by a public officer where no exercise of discretion on his part is involved."'" Lee, 359 Ill. App. 3d at 1133, 835 N.E.2d at 987, quoting Lewis E. v. Spagnolo, 186 Ill. 2d 198, 229, 710 N.E.2d 198, 813 (1999), quoting Madden v. Cronson, 114 Ill. 2d 504, 514, 501 N.E.2d 1267, 1272 (1986). As stated, in addition to proving a clear right to the relief requested, a defendant must prove the clear duty of the public official to act and the clear authority of the public official to comply with the writ. Romero, 302 Ill. App. 3d at 1034, 707 N.E.2d at 988; Lee, 359 Ill. App. 3d at 1133, 835 N.E.2d at 987.

Defendants claim that, even if plaintiff has established a clear right to relief, dismissal of his mandamus petition was proper because he showed no clear duty or authority on the part of any of defendants to comply with the writ. Reduced to its essence, defendants' claim is that with no appropriation from the General Assembly, they cannot pay plaintiff his COLA. We agree.

The State Comptroller Act provides that an obligation or expenditure must be

> "'pursuant to law and authorized' before the Comptroller may draw a warrant for its payment. 15 ILCS 405/9(b) (West 2002). In most instances the requisite authority is found in

˅ 12 ˅

statutory enactments supported by relevant appropriations. Other types of 'obligational or expenditure authority,' however, will also suffice. See 15 ILCS 405/9(b), (c) (West 2002)." Jorgensen, 211 Ill. 2d at 311-12, 811 N.E.2d at 667.

In Board of Trustees of Community College District No. 508 v. Burris, 118 Ill. 2d 465, 515 N.E.2d 1244 (1987), the supreme court held that the Comptroller appropriately refused to reimburse plaintiff for funds it had expended for veterans' scholarships, because the General Assembly did not make an appropriation for the payment despite the fact the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, pars. 2201 through 2210) required the reimbursement. The court noted that the amounts appropriated for veterans' scholarships by the General Assembly had been reduced by the Governor and the legislature did not restore them. Burris, 118 Ill. 2d at 478-79, 515 N.E.2d at 1250. The court found that for the Comptroller to pay the amounts, he would be able to "'override' the action of the legislature and the Governor in making these reductions in an appropriations bill, creating obvious problems under the separation of powers doctrine." Burris, 118 Ill. 2d at 479, 515 N.E.2d at 1250.

However, in Jorgensen, the supreme court gave authorization by court order to the Comptroller to issue warrants drawn on the treasury of the State of Illinois to pay the judges. In so doing, the court observed, "'[w]here a statute categorically commands the performance of an act, so much money as is necessary to obey the command may be disbursed without any explicit appro-

priation.'" Jorgensen, 211 Ill. 2d at 314, 811 N.E.2d at 668, quoting Antle v. Tuchbreiter, 414 Ill. 571, 581, 111 N.E.2d 836, 841 (1953). The Jorgensen court did not share the Burris court's separation-of-powers concerns--that the Comptroller would, in effect, be unilaterally overriding the legislature's and Governor's actions by issuing the warrants drawn on the treasury. The court observed to the contrary:

"That situation is not before us here. The Comptroller is not being asked to draw warrants without authorization. We hereby give him authorization by court order. That order is issued pursuant to the inherent right of the courts to order payment of judicial salaries which the state was required by our constitution to make, a situation not presented or addressed by Burris. The distinction is critical. As we have just noted, the circumstances in Burris were such that compelling the comptroller to act would have created separation of powers problems. In this case, by contrast, compelling him to draw the warrants for the FY2003 COLA is necessary to prevent the separation of powers doctrine from being violated." Jorgensen, 211 Ill. 2d at 315, 811 N.E.2d at 669.

In the instant case, as in Burris and unlike Jorgensen, there is no constitutional prohibition to the diminishment of a State's Attorney's salary. Further, if the Comptroller were to

make the payments as plaintiff requests, he would, as was the case in Burris, "override" the action of the General Assembly without a constitutional mandate.

Because article VI, section 16, of the Illinois Constitution contains no prohibition against increases or decreases in a State's Attorneys' salary, Public Act 92-607's denial of a COLA to plaintiff is not unconstitutional.  Further, because plaintiff has failed to demonstrate a clear right to the relief he requests and the defendants' clear duty to act, he has failed to state a claim for mandamus.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, P.J., and KNECHT, J., concur.